IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEEMAC SERVICES, LLC,<br><br>      *Plaintiff,*<br><br>v.<br><br>REPUBLIC STEEL,<br><br>      *Defendant.* | Civil Action No. 2:20-cv-1466<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

  Plaintiff, Deemac, Inc. ("Deemac"), filed suit against Defendant, Republic Steel ("Republic"), in the Court of Common Pleas of Beaver County, Pennsylvania, requesting relief under various state law causes of action for Republic's alleged failure to pay Beemac for transportation and shipping services performed in 2019 and 2020. (ECF No. 1-2, ¶¶ 5–16, 23–50). Republic removed the action to this Court under 28 U.S.C. §§ 1332, 1441, and 1446 (ECF No. 1, p. 1), and subsequently filed a Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 4) under Federal Rule of Civil Procedure 12(b)(2). The parties have filed their respective positions on the issues, and for the reasons that follow, the Court will deny Republic's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 4).

**I. BACKGROUND**

  Deemac is a professional trucking and logistics company that provides services throughout North America. (ECF No. 11-1, ¶ 5). It is organized as a limited liability company under the laws of Pennsylvania where it also has its principal place of business. Deemac has locations in both

1

Pennsylvania and Ohio. (ECF No. 1-2, ¶ 5); (ECF No. 1-3). Republic is a Delaware corporation and its principal place of business is located in Ohio. (ECF No. 1-2, ¶ 2); (ECF No. 5-2, ¶ 3).

Throughout the years, Republic has reached out and engaged with Deemac for the transportation and shipment of products "to or from locations in several states, including Pennsylvania." Consistent with their preexisting relationship, Republic, on two separate occasions, solicited the business of Deemac in Pennsylvania. On both occasions, Republic invited Deemac to respond to its Request for Quotation, which concerned transportation service rates for various "lanes in interstate commerce designated by Republic for its business needs." Some of those lanes included areas in Pennsylvania. Each time, Deemac responded by offering its lane rates and Republic twice agreed to those rates. Thereafter, Deemac proceeded to transport shipments for Republic through Pennsylvania to various locations. (ECF No. 11-1, ¶¶ 6–8, 11, 13–15, 18). In doing so, Deemac used trucks and employees located in Pennsylvania. (ECF No. 11-1, ¶ 5). It was also standard practice for Republic to wire payments to Deemac in Pennsylvania. (ECF No. 11-1, ¶ 20).

For each shipment, Deemac constructed and sent bills of lading and invoice documents to Republic, to which Republic represented that it agreed to pay the offered rates set forth in those documents. In reliance on those representations, Deemac allegedly performed by providing transportation and shipping services to Republic. (ECF No. 11-1, ¶ 19). Republic, however, has not paid Deemac for the transportation services at issue. (ECF No. 11-1, ¶ 22). Deemac alleges that it sustained monetary damages in the amount of $1,703,531.29, and requests relief under the following common law causes of action: (1) breach of contract; (2) unjust enrichment; (3) account stated; (4) fraud in the inducement; and (5) negligent misrepresentation. (ECF No. 1-2, ¶¶ 23–50).

**II.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a case when a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). A court must analyze jurisdictional contacts on a claim-by-claim basis. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 104 (3d Cir. 2004). Once a defendant contests the sufficiency of personal jurisdiction, the burden shifts to a plaintiff to establish personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). If there is no evidentiary hearing, a plaintiff must make a prima facie case by furnishing facts that establish with reasonable particularity that personal jurisdiction exists. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citation omitted). If a court holds an evidentiary hearing, the standard of proof elevates to a preponderance of the evidence standard. *LaRose v. Sponco Mfg., Inc.*, 712 F. Supp. 455, 458–59 (D.N.J. 1989) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). *See also Hufnagel v. Ciamacco*, 281 F.R.D. 238, 244 (W.D. Pa. 2012) (citing cases). If a plaintiff meets his burden, the burden shifts back to the defendant to present a compelling case that personal jurisdiction is unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

A plaintiff's case cannot merely rely on the pleadings but must be supported by sworn affidavits or other competent evidence. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). All allegations made by a plaintiff are accepted as true and all disputed facts are construed in the plaintiff's favor. *Carteret*, 954 F.2d at 142 n.1. To that end, any conflicts between the evidence submitted by a plaintiff and a defendant are construed in a plaintiff's favor. *In re Enter. Rent-A-Car Wage & Hour Empl.'t Practices Litig.*, 735 F. Supp. 2d 277, 307 (W.D. Pa. 2010). If a plaintiff initially fails to meet his burden but makes factual allegations suggesting

3

that the requisite contacts exist, a court can order jurisdictional discovery to ameliorate the jurisdictional inquiry. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

### III. ANALYSIS

Republic requests that the Court dismiss this case on the ground that it lacks personal jurisdiction over Republic because neither general nor specific personal jurisdiction are applicable. (ECF No. 5, pp. 2–7). Deemac does not argue that general jurisdiction is present, but rather it contends that the Court has specific personal jurisdiction over Republic because it purposefully directed its conduct to the forum, the claims arose out of or relate to that conduct, and the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice.[1] (ECF No. 11, pp. 5–13).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)) (internal quotation marks omitted). "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Id.* (quoting Fed. R. Civ. P. 4(k)(1)(A)).

A district court's exercise of personal jurisdiction over a defendant "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is

---

[1] Deemac alternatively requests that the Court hold an evidentiary hearing to resolve any remaining questions or concerns regarding the presence of either general or specific personal jurisdiction. (ECF No. 11, pp. 13–14). Our Court of Appeals has provided that "[w]here [a] plaintiff's claim is not clearly frivolous, [a] district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging [its] burden." *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983). The Court does not need to hold an evidentiary hearing because the submissions of the parties are sufficient to resolve the jurisdictional dispute presently before the Court, and for the reasons set forth *supra* at pages 4–18, Deemac has established a *prima facie* case of specific personal jurisdiction over Republic.

'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021) (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945) then quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1779 (2017)). With this focus in mind, the Supreme Court has recognized two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).[2]

Specific personal jurisdiction, which is at issue here, was founded on "an idea of reciprocity" between a defendant and the forum. *Id.* at 1025. Put similarly, "[w]hen (but only when) a company 'exercises the privilege of conducting activities within a state'—thus 'enjoying the benefits and protections of its laws'—the State may hold the company to account for related misconduct." *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 319). A defendant should be provided with "fair warning," which means "knowledge that 'a particular activity may subject it to the jurisdiction of a foreign sovereign.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "The law of specific jurisdiction . . . seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.* (citing *Bristol-Myers*, 137 S. Ct. at 1780).

To establish specific personal jurisdiction, a federal court sitting in diversity must first ascertain whether the relevant state's long-arm statute permits the exercise of personal jurisdiction, then a court must ask whether it may properly exercise jurisdiction under the Due Process Clause.

---

[2] The Court does not have general personal jurisdiction over Republic because Republic is not at home in the forum. Republic is incorporated in Delaware and has its principal place of business in Ohio. (ECF No. 12, p. 3).

5

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Because "Pennsylvania's long-arm statute gives its courts jurisdiction over out-of-state defendants to the maximum extent allowed by the U.S. Constitution[,]" *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020), the Court's inquiry at step one is merged into its analysis at step two.[3] Specific personal jurisdiction is accordingly present when the following three elements are

---

[3] Pennsylvania's long-arm statute provides several circumstances in which its courts may exercise personal jurisdiction over persons residing outside of Pennsylvania either acting directly or by their agents:

> **(a) General rule.**--A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:
>
> (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:
>
> (i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
>
> (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
>
> (iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.
>
> (iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.
>
> . . . .
>
> (2) Contracting to supply services or things in this Commonwealth.
>
> (3) Causing harm or tortious injury by an act or omission in this Commonwealth.

established: (1) a defendant purposefully directs its activities at the forum, (2) a plaintiff's claims arise out of or relate to the defendant's activities, and (3) the exercise of personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 316) (internal quotation marks omitted).

Deemac requests monetary relief under the following causes of action: (1) breach of contract; (2) unjust enrichment; (3) account stated; (4) fraud in the inducement; and (5) negligent misrepresentation. (ECF No. 1-2, ¶¶ 23–50). "Usually a court determines specific jurisdiction on a claim-by-claim basis." *Neopart Transit, LLC v. Management Consulting, Inc.*, No. 16-3103, 2017 WL 714043, at *4 (E.D. Pa. Feb. 23, 2017) (citing *O'Connor*, 496 F.3d at 318). "Claim-specific analysis is appropriate for analyzing a case with both contract and tort claims because 'there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims.'" *Id.* (quoting *Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir. 2001)). Claim-specific analysis, however, is not required where the claims at issue factually overlap. *O'Connor*, 496 F.3d at 318 n.3. *Cf. Remick*, 238 F.3d at 255 (providing that it is not always necessary to conduct claim-specific analysis in every case involving multiple claims, however, the district court

---

    (4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

42 Pa. C.S. § 5322(a)(1)–(4). Deemac's allegations, taken together with the submissions of the parties are sufficient under Pennsylvania's long-arm statute to confer personal jurisdiction on Republic because the allegations and submissions tend to show that Republic contracted business within Pennsylvania, provided shipping services by shipping products through Pennsylvania, and allegedly caused tortious and contractual injuries in Pennsylvania. The jurisdictional inquiry, however, does not end there because the Court's exercise of specific personal jurisdiction must still comport with the teachings of *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny. The Court must therefore continue its jurisdictional inquiry to ascertain whether the circumstances of this case comply with the procedural due process guarantees afforded by the U.S. Constitution.

should have done so where claims consisted of breach of contract, defamation, misappropriation, and intentional interference).

Deemac's state law contract and tort claims stem from the same underlying factual circumstances—namely, the communications and representations underlying the creation and performance of the alleged contract, and subsequent nonpayment—and the parties have likewise addressed the issue of specific personal jurisdiction without differentiating between specific claims. The Court will, therefore, analyze Deemac's claims simultaneously to discern whether it may properly exercise specific personal jurisdiction over Republic. *See Neopart Transit, LLC*, 2017 WL 714043, at *2–4 (simultaneously analyzing, *inter alia*, breach of contract, unjust enrichment, and intentional interference claims because they stemmed from the same conduct).

A.   **Purposeful Availment**

Turning to the first requirement of specific personal jurisdiction, the Court must be satisfied that Republic purposefully directed its conduct or activities to Pennsylvania. Deemac has provided several circumstances to show that Republic purposefully availed itself of the protections afforded by Pennsylvania's laws. Those circumstances include: (1) Republic solicited Deemac in Pennsylvania; (2) the parties had a preexisting business relationship; (3) Deemac transported shipments for Republic from various places through Pennsylvania; (4) Deemac utilized trucks located in Pennsylvania; (5) Republic wired payments to Deemac in Pennsylvania; and (6) Republic and Deemac continued their business relationship after contracting. Republic contests Deemac's contentions in their entirety and argues that it did not purposefully avail itself of the privilege of conducting business in Pennsylvania.

As a threshold matter, a district court cannot exercise personal jurisdiction over a defendant that has not "purposefully avail[ed] itself of the privilege of conducting activities within the forum

8

State." *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A defendant's contacts with the proposed forum "must be [its] own choice and not 'random, isolated, or fortuitous.'" *Id.* at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (2014)). In this vein, a defendant must have "deliberately 'reach[ed] out beyond' its home—by, for example, 'exploiting a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden*, 571 U.S. at 285).

At the outset, it is of no consequence that Republic has no offices, property, or bank accounts in Pennsylvania, and it does not matter that Republic did not physically visit Deemac in Pennsylvania because "[w]hen a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Remick*, 238 F.3d at 257 (quoting *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1225 (3d Cir. 1992)). *See also Farino*, 960 F.2d at 1225 (quoting *Burger King*, 471 U.S. at 476) ("Defendants go on to list all the physical contacts that they do not have with Pennsylvania, e.g., no residence, no office, no bank accounts, no telephone listing, no property in the Commonwealth. While it may be true that the defendants have no physical connection with the forum, that is not dispositive. When a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'").

Republic does, however, correctly point out that an alleged contract between the parties, standing alone, is not enough to establish a meaningful connection to Pennsylvania. (ECF No. 5, pp. 5–6). *See Farino*, 960 F.2d 1225 ("The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident.").

Nor can it be said that Deemac's use of trucks located in Pennsylvania to transport Republic's shipments confers personal jurisdiction. *See Walden*, 571 U.S. at 286 (providing a plaintiff's unilateral activities are insufficient to establish personal jurisdiction over a defendant). Nevertheless, these points are not fatal to personal jurisdiction, and the Court's inquiry in these circumstances requires a reasoned consideration of "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 257 (citing *Farino*, 960 F.2d at 1223). *See also Control Screening LLC v. Technological Application and Production Co. (Tecapro)*, 687 F.3d 163, 168 (3d Cir. 2012) (providing that courts may examine prior negotiations, contemplated future consequences, terms of the agreement, and actual course of dealing to decide personal jurisdiction).

While the factual circumstances of this case undoubtedly present a difficult question to resolve, it is at least clear that Republic has reached out to some extent beyond its home states and created a continuing business relationship with a Pennsylvania based organization. *See Remick*, 238 F.3d at 257 (quoting *Farino*, 960 F.2d at 1222) ("jurisdiction is proper where parties 'reach out beyond one state and create continuing relationships and obligations with citizens of another state.'"). And, while the ultimate inquiry still requires an independent factual assessment of a defendant's contacts with the forum, and each case must be judged on its particular facts, *Farino*, 960 F.2d at 1224, that "does not mean that [a court] must decide . . . cases in a vacuum, without the benefit of the wisdom and insight of other courts that have decided similar questions." *Id.* at 1225.

In *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687 (3d Cir. 1990), a Pennsylvania corporation engaged in the purchase, storage, and distribution of natural gas,

contracted with a New York corporation for the sale and storage of natural gas. *Id.* at 689. The agreements required the gas to be exchanged at the New York-Pennsylvania border, and the storage of gas would occur in Pennsylvania. Although natural gas was never stored in Pennsylvania, the Third Circuit nevertheless held that the district court had personal jurisdiction over the New York corporation because, among other things, the parties had a preexisting business relationship that included continuing obligations between the parties, the New York corporation made payments into Pennsylvania, and the storage agreement concerned services rendered in Pennsylvania. *Id.* at 689–91.

In *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992), a Pennsylvania bank brought suit against the limited partners of several limited partnerships based in Virginia. *Id.* at 1219. The limited partners were residents of Virginia and New York respectively. *Id.* The partnerships reached out to the bank to obtain real estate financing and represented that they would personally guarantee loans made to the partnerships on the ground that "the talent and experience that each partner brought to the partnerships was fundamental to . . . success." *Id.* at 1219–20. Relying on the communications and representations of the partnerships, the bank made the loans and required the partnerships to make monthly interest and principal payments in Pennsylvania. *Id.* The Third Circuit held that the partnerships had purposefully availed themselves of Pennsylvania's laws because they should have been aware under the circumstances that they were dealing with a Pennsylvania bank, made payments and sent correspondence to Pennsylvania, and established the business relationship by contacting and communicating with the bank. *Id.* at 1223. In doing so, the Court emphasized that the defendants' direct solicitation of business in Pennsylvania, together with their contacts with Pennsylvania both before and after the contracts, supported the existence of personal jurisdiction. *Id.* at 1226. In

other words, "by asking [the bank] to lend money and offering to guarantee that debt, the defendants deliberately 'reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state[.]'" *Id.* (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).

In *Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001), a Pennsylvania sports and entertainment attorney brought suit against his former client and various other individuals and an entity for claims arising out of his contractual agreement with the client. *Id.* at 252. The attorney previously represented the client in negotiations for fight promotions, and under their agreement, the attorney was entitled to "purses or other compensation . . . received for boxing or promotions." *Id.* After a falling out, the client sent the attorney a termination letter, and entered into an agreement with a fight promoter to fight another boxer. *Id.* The attorney asserted that he was entitled to a percentage of the money received from that negotiation, and he sent his client a letter rejecting the termination of his representation. *Id.* The Third Circuit provided that the attorney's contractual claim substantially resembled the case distinguishments mentioned in *Farino*:

> this is not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract. Nor is this a case where the defendant sent any payments to the plaintiff in the forum state, or where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state.

*Id.* at 256 (quoting *Farino*, 75 F.3d at 152–53). *See also Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 152–53 (3d Cir. 1996) (distinguishing the case at hand from the circumstances found in *Farino* and *North Penn* because the defendant had not "solicited the contract or initiated the business relationship leading up to the contract[,]" "sent any payments to the plaintiff in the forum state," "or . . . engaged in extensive post-sale contacts with the plaintiff in the forum state."). The resemblance was apparent because the attorney sought the client out by phoning the attorney's associate at his office in Pennsylvania, and that solicitation

12

resulted in a fee arrangement between the attorney and the client. *Id.* At the same time, the client sent payments to the attorney in Pennsylvania, the services were performed in Pennsylvania, and communications were sent to Pennsylvania. *Id.* (citing *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993)) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."). The Court therefore likened the case to the circumstances presented in *Farino* wherein the defendants, "by approaching the bank, . . . 'establish[ed] a business relationship with a Pennsylvania entity' and 'knowingly created continuing obligations with a citizen of Pennsylvania.'" *Id.* (quoting *Farino*, 960 F.2d at 1223).

Against this backdrop, it is evident and material that the parties had an ongoing business relationship—one concerning the same shipping and transportation services at issue in this action—and in congruence with that relationship, Republic solicited Deemac in Pennsylvania to provide the same services stemming from that relationship—shipping and transportation services.[4] What is more, Republic's solicitation resulted in communications between the parties and a subsequent agreement for Deemac to transport shipments through Pennsylvania to and from various locations.[5] *See Vetrotex*, 75 F.3d at 151 (analyzing personal jurisdiction and noting that "[n]o product was shipped from, *through*, or to Pennsylvania.") (emphasis added). At the same

---

[4] Republic appears to acknowledge that it solicited the business of Deemac in Pennsylvania because, in arguing the opposite, Republic provides that it "did not purposefully or deliberately target citizens of Pennsylvania *when it solicited* quotes . . . ." (ECF No. 12, p. 12) (emphasis added).

[5] To the extent Republic asserts that "to [its] knowledge, the agent or agents of [Deemac] providing the trucking services at issue in this matter were located in Ohio[,]" (ECF No. 5-2, ¶ 9), that assertion conflicts with the factual statements provided by Deemac, and the Court is required to resolve any conflicts between the evidence submitted by a plaintiff and a defendant in the plaintiff's favor. *In re Enter. Rent-A-Car Wage & Hour Empl.'t Practices Litig.*, 735 F. Supp. 2d at 307.

time, Republic wired payments to Deemac in Pennsylvania, and after performing the requested services, Republic continued to retain Deemac to provide the same shipping services. (ECF No. 11-1, ¶¶ 6, 8, 11, 13, 15, 18, 20).

Under these circumstances, accepting the allegations as true and construing any factual disputes in Deemac's favor, the Court holds that Republic has purposefully availed itself of the benefits of conducting business in Pennsylvania because the parties had an ongoing business relationship regarding the same services currently at issue, Republic solicited the business of Deemac in Pennsylvania and the parties contracted as a result, Republic made payments to Deemac in Pennsylvania, shipments were transported through Pennsylvania, and the parties continued their business relationship after engaging in the agreements at issue.

B.     Arise Out of or Relate to

Even though Deemac has established that Republic purposefully availed itself of the privileges of conducting business in Pennsylvania, personal jurisdiction is not automatically conferred "because the defendant is not 'at home'—[and] the forum State may exercise jurisdiction in only certain cases." *Ford Motor Co.*, 141 S. Ct. at 1025. To that end, a plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum state. *Id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1780).

Prior to the Supreme Court's pronouncements in *Ford Motor Co.*, this inquiry depended, in part, on the types of claims brought: contract claims are examined under a "restrictive standard" that requires a defendant's forum contacts to be instrumental in formation or breach, while tort claims require a less restrictive standard that requires a defendant to have "benefited enough from the forum state's laws to make the burden of facing litigation there proportional to those benefits." *Danziger & De Llano, LLP*, 948 F.3d at 130 (quoting *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144,

14

150 (3d Cir. 2001)) (citations omitted). Both tests require something more than but-for causation, and intentional torts require a bit more: "'[a] defendant [must have] expressly aimed [its] tortious conduct at the forum' to make the forum 'the focal point of the tortious activity.'" *Id.* (quoting *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998)).

While Republic's motion was pending, however, the Supreme Court expressly provided that specific jurisdiction does not always require "proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co.*, 141 S. Ct. at 1026 (citing *Bristol-Myers*, 137 S. Ct. at 1779–81). This is simply because while "the first half of [the] standard asks about causation[,] . . . the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id. See also id.* at 1033 (Alito, J., concurring) ("Ford . . . asks us to adopt an unprecedented rule under which a defendant's contacts with the forum State must be proven to have been a but-for cause of the tort plaintiff's injury. The Court properly rejects that argument, and I agree with the main thrust of the Court's opinion."); *id.* at 1034 (Gorsuch, J., concurring) ("The majority admits that 'arise out of' may connote causation. But, it argues, 'relate to' is an independent clause that does not."). The Court nevertheless cautioned that the current formulation "does not mean anything goes[,]" and it "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* What these limits are is left to the imagination because the Court does not define or offer any limiting principles. *Id.* at 1035 (Gorsuch, J., concurring) ("the majority offers no meaningful guidance about what kind or how much of an 'affiliation' will suffice. Nor . . . does the majority tell us whether its new affiliation test supplants or merely supplements the old causation inquiry.").

Due to the Supreme Court's recent decision in *Ford Motor Co.*, it is apparent that the Third Circuit's causation-focused relatedness test—one that "requires a closer and more direct causal

connection than that provided by the but-for test[]"—*O'Connor*, 496 F.3d at 323, is not the only method for a plaintiff to show that its claims share a sufficient relationship with the defendant's purposeful contacts with the forum. At the same time, however, the Third Circuit has impliedly recognized the same because the Court has not categorically adopted a bright-line test, and courts are still required to examine the existence or absence of personal jurisdiction in each case on an individual basis. *Id.* at 323. Regardless of what may or may not suffice to show that a plaintiff's claims "relate to" the defendant's in forum contacts, it remains true—and as the Supreme Court recognized—that "[t]he first half of [the] standard asks about causation . . . ." *Ford Motor Co.*, 141 S. Ct. at 1026. *See also id.* at 1026 ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum."); *Id.* at 1033 (Alito, J., concurring) ("because this phrase is cast in the disjunctive, the Court recognizes a new category of cases in which personal jurisdiction is permitted . . . ."); *Id.* at 1034 (Gorsuch, J., concurring) ("the majority zeros in on the disjunctive conjunction 'or,' and proceeds to build its entire opinion around that linguistic feature.").

Accordingly, the Court will analyze the connection between Deemac's claims and Republic's purposeful contacts with the forum by applying the Third Circuit's causation-focused test set forth above because the Supreme Court did not expressly or impliedly overrule that test, but instead, simply highlighted that there are two methods of showing a sufficient connection between a plaintiff's claims and the defendant's contacts with the forum. Under that test, Deemac's claims arise out of Republic's purposeful contacts with the forum because Republic took advantage of Pennsylvania's laws—which "allow individuals and businesses to make and enforce binding agreements"—*O'Connor*, 496 F.3d at 323, by soliciting the business of Deemac,

16

and forming a resulting binding agreement. In doing so, Republic allegedly failed to perform its end of the bargain and made misrepresentations to Deemac concerning its ability or willingness to make the appropriate payments. "So intimate a link justifies the exercise of specific jurisdiction as a quid pro quo for [Republic's] enjoyment of the right to form binding contracts in Pennsylvania." *Id.* at 324.

For these reasons, the Court holds that Deemac's claims arise out of Republic's purposeful contacts with Pennsylvania because Republic capitalized on Pennsylvania's laws permitting businesses to enter into binding agreements by soliciting and forming an agreement with Deemac, and Republic allegedly violated that agreement by failing to perform and making misrepresentations.

### C.     Fair Play and Substantial Justice

Because Deemac has satisfied its burden of showing that Republic purposefully availed itself of the privileges of doing business in Pennsylvania and Deemac's claims arise out of those purposeful contacts, the Court must consider "whether the exercise of jurisdiction would otherwise comport with 'traditional notions of fair play and substantial justice.'" *O'Connor*, 496 F.3d at 324. (quoting *Int'l Shoe*, 326 U.S. at 316). In this endeavor, there exists a presumption of constitutionality where a plaintiff has shown the required minimum contacts, and a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King*, 471 U.S. at 477) (internal quotation marks omitted). *See also id.* (citing *Pennzoil Prods. Co. v. Colelli Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998)) ("if minimum contacts are present, then jurisdiction will be unreasonable only in 'rare cases'). Republic's argument simply reiterates its prior contestations of minimum contacts, and although it argues that litigation in Ohio would be more efficient, its "burden is lessened by the

geographic proximity of the two neighboring states." *Neopart Transit, LLC*, 2017 WL 714043, at *7 (citing *O'Connor*, 496 F.3d at 324). The exercise of personal jurisdiction over Republic would not offend traditional notions of fair play and substantial justice.

IV.  **CONCLUSION**

For the reasons set forth above, the Court will deny Republic's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 4) because Deemac sufficiently furnished factual circumstances establishing a *prima facie* case of personal jurisdiction over Republic. Republic purposefully availed itself of the privileges of doing business in Pennsylvania, Deemac's claims arise out of those purposeful contacts, and the exercise of specific personal jurisdiction is consistent with traditional notions of fair play and substantial justice. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

May 20, 2021
Dated: